

# THE ATTORNEY GENERAL
## OF TEXAS

**Grover Sellers**

~~XXXXXXXXXXXXXXXXXXXX~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Hon. Sidney Latham
Secretary of State
Austin, Texas

Dear Sir:

Opinion No. 0-6204
Re: Procedure of the
Republican Party to
have its candidates
appear on the general
election ballot and
related questions.

    We have your letter of recent date requesting the opinion of this department on the question stated therein. Said letter is, in part, as follows:

    "Articles 3154-3158, both inclusive, RCS 1925, govern the activities of political parties in Texas which cast as many as 10,000 and less than 100,000 votes for Governor in the preceding general election. The Republican Party in Texas has generally fallen into this classification, and has continued to function during the year 1944, preparatory to the coming general election under the provisions of these articles.

    "In accordance with Article 3155 the Republican Party, on May 22, 1944, duly filed in this office a certificate of its decision to nominate State, district and county officers by convention rather than by primary election.

    "Pursuant to Article 3154 the Republican Party held a State convention and nominated certain candidates for State offices, which have been certified to this office.

    "Pursuant to Article 3156 such Party held numerous district conventions on the fourth Tuesday in August (August 26, 1944) and such district conventions subsequently certified the nomination of various congressional and legislative candidates to this office. Most of these certificates were

executed by the chairman of the district convention.
It is to be noted that Article 3157 provides that
such certifications are to be made by the chairman
of the State or district committee. It is to be
further noted that the time of the meeting of such
district conventions is fixed under Article 3156
by the language, 'on the same days as herein pre-
scribed for district conventions of other parties'.
This is an apparent reference to former Article
3135 which fixed the time of meeting of district
conventions for parties casting in excess of 100,000
votes as the fourth Saturday in August. This article,
however, was repealed in 1933.

"If the group of statutes first above re-
ferred to are not applicable to the Republican
Party by reason of their failure to cast as
many as 10,000 votes at the last general elec-
tion, then we find no other applicable statutory
provisions. The only other enactments we find are
Articles 3100-3153 governing parties in excess of
100,000 votes; Articles 3159 to 3162 governing
nonpartisan and independent candidates; and Arti-
cle 3163 governing parties without State organ-
izations. The Republican Party would be excluded
from the first classification by reason of its
number of votes cast; from the second because it
is neither nonpartisan and its candidates are not
independent candidates; and from the third because
it does have a State organization; nor does the
case of Morris vs. Mims, 224 S.W. 587, seem to be
in point since it applies only to new political
parties.

"In the light of the above facts, will you
please advise this Department upon the following
inquiries:

"1. Can the Republican Party legally perform
the functions authorized by, and in accordance
with, the provisions of Articles 3154-3158, both in-
clusive, for the 1944 general election when it cast
less than 10,000 votes for Governor in the 1942
election?

"2. If you have answered question number 1 'Yes', then is a nomination made by a Republican District Convention valid when such convention met on the fourth Saturday in August, but which time was fixed by reference to Article 3135 which has been repealed?

"3. Is a certification by a district convention such as is authorized by Article 3156 sufficient if it is executed by the chairman of the convention rather than by the chairman of the district committee as required by Article 3157?

"4. If you have answered question number 1 'No', then by what procedure can the Republican Party have its candidates appear on the general election ballot?"

Generally speaking, it is stated in our Opinion No. 0-2188:

". . .

"Section 21 of Article IV directs the Secretary of State to 'perform such other duties as may be required of him by law'. In so far as these duties relate to elections, these duties are enumerated in the statutes comprising Title 50 of the Revised Civil Statutes, and Title 6 of the Penal Code. Article 2925, Revised Civil Statutes, directs him to 'prescribe forms of all blanks' for ballots, etc., 'and furnish same to county judge'. Articles 2926 and 2979 provide that the death of any state or district officer or nominee shall be certified to the Secretary of State. Article 2928 prohibits the Secretary of State from issuing certificates of election or appointment to anyone 'who is not eligible to hold such office under the Constitution' . . . Article 2982 requires the Secretary of State to hold a drawing to determine the order in which proposed constitutional amendments shall appear on the ballot. Article 2997a directs the Secretary of State to examine and approve voting machines. Articles 3026a and 3033 direct county judges to mail election returns to the Secretary of State, and Article 3034 provides that he shall open and count the returns of elections. Article 3155 requires state committees of political parties whose nominee for governor polled between 10,000 and 100,000 votes at the last election to certify to the Secretary of State whether they will

nominate their candidate by convention or primary election. Article 3157 requires such nominations to be certified to the Secretary of State. By Article 3159, non partisan or independent candidates are directred to make application to the Secretary of State to have their names placed on the ballot, and Article 3161 directs the Secretary of State to relay the names to the county clerks. Articles 3168-3173 provide for reports of campaign expenditures to be made to the Secretary of State.

"This enumeration of the statutory duties of the Secretary of State relating to elections indicates that all of his said duties are ministerial in character. Nowhere do we find any discretionary power lodged in the Secretary of State to authorize him to refuse a place on the ballot to the duly designated nominees of any political party."

As stated in the case of Morris v. Mims, 224 S.W. 587:

"Our election laws provide for the nomination of candidates by political parties whose candidate for governor received as many as 100,000 votes at the last preceding general election, and also for the nomination of candidates by political parties whose candidate for governor received, at the last preceding general election, more than 10,000 and less than 100,000 votes. The first must be by primary election held in the manner prescribed. The second may be by primary election, or by nominating convention, at the option of such party. As such party elects to make its nomination by party conventions, it is required to notify the Secretary of State of such fact, and thereafter to hold its convention at the time and in the manner prescribed by statute."

". . . There are no other provisions of our statutes relating as to how nominations shall be made by a party convention, except Article 3163, which provides that persons participating in such party primary convention shall have paid their poll tax, and shall not have participated in the convention or primary of any other party held on the same day."

Articles 3154-3158, Vernon's Annotated Civil Statutes, pertain to political parties, whose nominee for governor in the preceding general election received as many as 10,000, and less than 100,000 votes. The Republican Nominee for Governor received less than 10,000 votes in the 1942 General Election. Apparently, the Republican Party has followed Articles 3154-3158, supra, in making nominations this year, although the nominee for governor of said party received less than 10,000 votes in the 1942 General Election. This being true, it is our opinion that the same principles of law announced in the case of Morris vs. Mims, supra, is applicable to the present situation of the Republican Party and that such Party can legally perform the functions authorized by, and in accordance with, the provisions of Articles 3154-3158, supra. (See the case of Sterling vs. Ferguson, 53 S.W.2d 753).

The statutes prescribe no method by which a party may make nominations, whose nominee for governor in the last preceding general election received less than 10,000 votes. Such being the case, it is our opinion, that such party has the right to pursue any reasonable method in making its nominations, not prohibited by law. Therefore, your second and third questions are answered in the affirmative. As we have answered your third question in the affirmative, it becomes unnecessary to discuss your fourth question.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By: /s/ Ardell Williams
Assistant

AW:rt

APPROVED SEP. 25, 1944

/s/ GROVER SELLERS
ATTORNEY GENERAL OF TEXAS

APPROVED
Opinion Committee
By: /s/ BWB
Chairman